**Helen T. PATTON, Plaintiff,**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 2965.**

United States District Court
W. D. North Carolina,
Asheville Division.

Aug. 20, 1969.

---

Harry S. Cline, of McGuire, Baley & Wood, Asheville, N. C., for plaintiff.

Keith S. Snyder, U. S. Atty., Asheville, N. C., for defendant.

## MEMORANDUM OF DECISION

JONES, Chief Judge.

This is a civil action instituted by the plaintiff on October 23, 1968, pursuant to Section 205(g) of the Social Security Act, as amended, [42 U.S.C.A. § 405(g)], to obtain court review of the final decision of the Secretary of Health, Education and Welfare on her claim for social security disability benefits.

Plaintiff filed an application for a period of disability and for disability benefits on September 7, 1967, alleging that she became unable to work prior to September 30, 1960. The application was initially denied. On April 29, 1968, plaintiff appeared before a Hearing Examiner for a hearing *de novo*. The Hearing Examiner issued his opinion on May 28, 1968, finding that plaintiff was not under a disability on or before September 30, 1960, the date on which she last had the necessary "insured status", for disability purposes. Plaintiff's re-

quest for review by the Appeals Council was denied on August 27, 1968, and the Hearing Examiner's decision became the "final decision" of the Secretary of Health, Education and Welfare.

The issue before this Court is whether there is substantial evidence to support the "final decision" of the Secretary that the plaintiff did not meet the statutory test of "disability" prior to September 30, 1960, the date on which she last met the requirements for an "insured status". Both the plaintiff and defendant have filed Motions for Summary Judgment based upon the record and have supported their respective motions by briefs. The Court has reviewed the record and has given careful consideration to the briefs submitted by counsel on both sides, and files this Memorandum Decision.

Plaintiff's application for disability benefits filed on September 7, 1967, alleged that she became unable to work in June 1960, at the age of 37, because of multiple sclerosis. The Hearing Examiner found however, that plaintiff's allegations were not supported by the evidence of record which revealed that the disease which was not positively diagnosed until 1967, had not progressed to a stage that could be considered disabling prior to September 30, 1960.

Plaintiff was born July 5, 1922, and has a high school education. During her vocational career she worked at a wide variety of jobs. Plaintiff quit her last job as a grocery store clerk in March 1956 because of her pregnancy. She resided with her ten year old son and husband, who was employed as a laborer. Plaintiff's husband and niece, Mrs. Duckworth, also testified, supporting her allegations.

The medical evidence of record consists of the reports of Dr. Hubert L. Clapp, Dr. H. R. Miller, Dr. John Ledbetter, Dr. P. M. Lerner, and Dr. Roger A. James.

Dr. Hubert Clapp's reports and testimony revealed that he saw the plaintiff on six occasions from April to September 1960 at which time her various complaints were numbness in the arms, weakness, fatigue, loss of appetite, weight loss and stomachache. Dr. Clapp attributed her symptoms to anemia. He found "nothing externally wrong as far as the arms were concerned", and that she had "sensation and at the time apparently she had good motor responses." Dr. Clapp's treatment primarily consisted of vitamin B-12 injections and dianabol, a drug to help patients gain weight and improve their appetite. Although plaintiff still complained of fatigue, Dr. Clapp testified that by the time of her visit in September 1960 she "felt more like herself." Dr. Clapp did not see the plaintiff again until March 1961 at which time he treated her for "sore throat", and he last attended her in April 1961 when "she had a gas spasm which lasted about a week or so." Dr. Clapp testified that through "hindsight" he felt that 1960 marked the onset of multiple sclerosis, an illness characterized by "remissions and exacerbations." He further testified that the development of the seriousness of the disease varies with the individual.

The report of Dr. Lerner, a urologist, does not give precise information as to when he provided treatment. However, the report of Dr. Miller indicates that Dr. Lerner commenced his treatment in 1962. Dr. Lerner informed the plaintiff in a letter dated December 29, 1967, "Starting in 1960 you developed difficulty in passing your water. We found some narrowness of the neck of your bladder and suspected the possibility of early multiple sclerosis and told Dr. Thompson, your family physician at that time about it."

In January 1964 plaintiff consulted Dr. H. R. Miller because she felt she had an ulcer. Dr. Miller's report indicates that plaintiff complained of a bilious attack, accompanied by abdominal pain. His examination " * * * revealed nothing very positive * * *." Following treatment, including medication, her symptoms were fairly well controlled, although she gained no weight. She got

along quite well until January 1965 when she developed a severe diarrhea. Gastrointestinal x-rays in January 1965 showed a shallow duodenal ulcer which " * * * was brought under control with conservative management * * *." Another x-ray in February 1965 failed to reveal the presence of an ulcer. Plaintiff then " * * * was essentially free of symptoms until 5/31/65 * * *." when she complained of a loss of appetite and nausea. About four days later, plaintiff informed Dr. Miller she had double vision and numbness in her tongue. At this time Dr. Miller recommended hospitalization. The initial report of Dr. John W. Ledbetter, a neurologist, was prepared in connection with her hospitalization from June 6, to June 15, 1965. Dr. Ledbetter's evaluation encompassed numerous laboratory procedures, including a spinal tap. Gastrointestinal studies disclosed a slight deformity of the duodenum that was thought to be a small ulcer crater which was treated by diet and medication. His report shows that the feeling of numbness and weakness "improved somewhat * * *" during her hospitalization. He diagnosed probable multiple sclerosis and a duodenal ulcer. The plaintiff was discharged from the hospital as improved.

Dr. Ledbetter again treated plaintiff from February 1967 to June 1967. In a letter dated February 28, 1967, to Dr. Summerlin, he discussed appropriate medication to control pain in the roof of her mouth. In his June 30, 1967 letter to Dr. Roger A. James, he reported, " * * She is looking generally better, has regained her appetite and gained some weight. There have been no new neurological symptoms. She has been informed of her diagnosis of multiple sclerosis and seems to be adjusting to it."

The record contains no report from Dr. Summerlin, but Dr. James, a general practitioner, submitted reports dated January 20 and February 26, 1968. He stated he had Dr. Otis Richard Thompson's records concerning his treatment of plaintiff in April 1960, and a number of months thereafter, for numbness of her left leg. Dr. James felt she was suffering from multiple sclerosis and was unable to work.

To receive disability benefits, plaintiff must meet the disability requirements set forth in the Act. Prior to the 1965 Amendment to the Social Security Act, "disability" was defined in both Section 216(i), (42 U.S.C.A. § 416[i]) (disability freeze), and Section 223 (42 U.S.C.A. § 423), (monthly disability benefits) of the Act as follows:

" * * * [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

The Social Security Amendments of 1967 (Public Law 90–248, enacted January 2, 1968) amended § 223 of the Social Security Act (42 U.S.C.A. § 423), and added detailed provisions designed to clarify the meaning of the test of disability first included in the Act by the 1965 Amendments.

Section 158(b), Public Law 90–248, added a new subsection "(d)" to § 223 of the Act. Section 223(d) (1) (A), (42 U.S.C.A. § 423[d] [1] [A]), like the 1965 Amendments to the Act, § 303 (a), P.L. 89–97, July 30, 1965, defines "disability" as:

" * * * [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *."

For the purpose of determining whether or not an individual is "disabled" within the definition of disability, Section 223(d) of the Social Security Act, as amended (42 U.S.C.A. § 423(d)), provides:

"(2) For purposes of paragraph (1) (A)—

(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

\* \* \* \* \* \*

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

■ The new provisions clarifying the definition of "disability" are applicable to civil actions brought to review the Secretary's decision if notice of his decision was not mailed to the claimant until after January, 1968. Section 158 (e), Public Law 90–248, January 2, 1968; Daniel v. Gardner, 390 F.2d 32 (5th Cir. 1968). As pointed out in the Daniel case, availability of employment must be determined in accordance with the provisions of the Social Security Act, as amended by the 1967 Amendments, and it is not necessary to consider the distance of jobs from the claimant's home or the hiring practices of employers, considerations that were formerly required by decisions such as Gardner v. Smith, 368 F.2d 77 (5th Cir. 1966).

■ The plaintiff has the burden of proving and establishing disability. Section 223(d) (5) of the Social Security Act, as amended (42 U.S.C.A. § 423[d] [5], provides as follows:

"An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

■ Where the plaintiff has failed to prove that she is unable to engage in her former occupation, she has failed to establish that she is unable to engage in "substantial gainful activity", and therefore, it is unnecessary for the Secretary to show what type of work she is capable of doing or the availability of such work. Section 158(b), Public Law 90–248, January 2, 1968. (42 U.S.C.A. § 423 [d] [2] [A]). Frankum v. Celebrezze, 343 F.2d 426 (4th Cir. 1965).

■ The jurisdiction of this Court is confined to a limited review of the Secretary's decision and the record made in the administrative hearing process. The determination of disability under the Act is an administrative decision and the only question before this Court is whether the decision of the Secretary is in fact supported by substantial evidence. Staples v. Gardner, 357 F.2d 922 (5th Cir. 1966).

■ In this case, the definition of "disability" contained in the Social Security Act relates to the plaintiff's ability to engage in substantial gainful activity on September 30, 1960, the date on which she was last insured under the Act for disability purposes. The plaintiff has the burden of showing that she became "disabled" prior to that date and continuously until at least the fourteenth month before she filed her application in September 1967 in order to be eligible to receive benefits or to have a period of disability established for her. Sections 216(i) (2) (E) and 223(a) (1) (D) of the Social Security Act (42 U.S.C.A., Sections 416[i] [2] [E] and 423[a] [1] [D]). Therefore, plaintiff cannot be found entitled to disability benefits or to a period of disability if she was able to engage in substantial gainful activity at

any time during the period from September 1960 to July 1966.

It is difficult to determine with accuracy the onset of plaintiff's disease. In 1960 and 1961 Dr. Clapp did not seem to suspect the presence of the disease, although through "hindsight" he testified that it was present in 1960. About 1962, Dr. Lerner, a urologist, "suspected the possibility of early multiple sclerosis". In 1965, Dr. Ledbetter, a neurologist, felt the presence of multiple sclerosis was probable, and he definitely diagnosed it in 1967.

In reports dated October 1967 and February 1968, Dr. Clapp stated that plaintiff was treated by him in 1960 and 1961 for anemia, fatigue and numbness and that during this period she became disabled. At the hearing in April 1968, after he examined other medical evidence of record and through the use of "hindsight", Dr. Clapp testified that the onset of plaintiff's disease was in 1960. He further testified that she was " * * * becoming disabled * * * " at this time.

The record shows that plaintiff has failed to carry her burden of proof in establishing that she was unable to work prior to September 30, 1960. This appears from the fact that early multiple sclerosis was not suspected until 1962 and from the uncertainty evidenced by Dr. Clapp's differing diagnoses. Furthermore, the Hearing Examiner considered the fact that plaintiff received intensive medical care only after 1964 as indicating that the disease had not then progressed to a serious stage. The evidence at least shows that the disease was in a long period of remission prior to 1964. Under either of these views of the evidence, plaintiff cannot be found to be "disabled" within the meaning of the Social Security Act.

A review of the entire record indicates that there is substantial evidence to support the Hearing Examiner's conclusion that plaintiff had not been prevented from engaging in substantial gainful activity and could, at least on or before September 30, 1960, still have worked at one of her usual occupations.

There is very little, if any, evidence in this record to indicate that plaintiff was disabled on September 30, 1960, or prior thereto. The Examiner noted that even as late as 1968, at the time of the hearing, that plaintiff was able to appear to testify and there appeared to be no defect in her speech nor was there evident loss of the use of any of her limbs. He also found that she had a valid driver's license and continued to operate a motor vehicle.

On June 2, 1969, plaintiff filed Motion for Summary Judgment and attached thereto copies of letters from various doctors not previously made a part of the record. The defendant moved to strike these letters on the grounds that a judicial review of the Secretary's decision in Social Security cases pursuant to Section 205(g) of the Act (42 U.S.C.A. § 405[g]), is confined to a limited review of the Secretary's decision and the record made in the administrative process. The courts have specifically denied plaintiffs the right to introduce additional evidence during the judicial proceedings on review. Sage v. Celebrezze, 246 F.Supp. 285 (W.D. Va. 1965). Therefore, this additional evidence which the plaintiff desires to introduce may not be considered by this Court except to determine whether the case should be remanded to the Secretary for further consideration on such evidence.

 Upon a careful examination of the evidence and the briefs submitted by the parties, this Court is of the opinion that the evidence is merely cumulative of the evidence which is already in the record and therefore does not amount to sufficient or good cause for remand. Sikes v. Flemming, 187 F.Supp. 872 (W.D. Mo. 1960). The Court, therefore, is of the opinion that defendant's Motion to Strike should be allowed.

 This is a difficult case to evaluate because the plaintiff voluntarily withdrew from the labor market in 1956 because of pregnancy, after which she chose

not to return to work. This occurred long before her alleged "disability" began in June 1960. This makes it more difficult for the plaintiff to sustain her burden of proof. Where a disability claimant has not worked and has made no attempt to work, the Secretary's determination that she is not disabled must be sustained on less evidence than would otherwise normally be the case. Miracle v. Celebrezze, 351 F.2d 361 (6th Cir. 1965).

After a careful reading of the record, the pleadings, the transcript of the testimony and the briefs filed by the attorneys, this Court is of the opinion that there is substantial evidence in the record to support the final decision of the Secretary entered in this cause. Plaintiff's Motion for Summary Judgment should be denied, and defendant's Motion for Summary Judgment should therefore, be granted. An order to that effect will be entered simultaneously herewith.