**Hazel FOSTER, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary of
Health, Education and Welfare,
Defendant.**

**Civ. A. No. 14531.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 12, 1971.

David L. Coker and James H. Wildman, King & Spalding, Atlanta, Ga., for plaintiff.

John W. Stokes, Jr., U. S. Atty., Julian S. Longley, Asst. U. S. Atty., Atlanta, Ga., for defendant.

EDENFIELD, District Judge.

This is an action to review a determination by the Secretary of Health, Education and Welfare that plaintiff is not entitled to the establishment of a period of disability or to disability insurance benefits under Section 216(i) and 223(d) of the Social Security Act. 42 U.S.C. §§ 416(i), 423(d). The Court's jurisdiction is invoked pursuant to Section 205(g) of the Act. 42 U.S.C. § 405(g).

Plaintiff filed an application for disability insurance benefits with the Social Security Administration on June 1, 1961 alleging that she became disabled on December 3, 1960. This application was denied because plaintiff did not meet the special earnings requirement.

Again on January 22, 1968, plaintiff filed her second claim alleging the date of disability to be in September of 1958. This claim was also denied because she did not meet the special earnings requirement of the Act on the date of alleged disability.

Plaintiff then amended her second application to show the onset date of disability as 1953, a date within the period of time both parties now agree she met the special earnings requirement. That uncontested date is September 30, 1956. This second and amended application was denied on July 28, 1969.

Being dissatisfied with this result, plaintiff filed a request for a hearing *de novo* before a hearing examiner of the Bureau of Hearings and Appeals. Such a hearing was held on February 24, 1970 where plaintiff appeared together with her attorney and witnesses. After taking testimony and other evidence, the examiner found adversely to the claimant on May 25, 1970.

This decision became the final decision of the Secretary when it was affirmed by the Appeals Council on October 29, 1970. This timely action for judicial review followed.

The defendant contends that plaintiff has failed to carry her burden of proof and plaintiff contends that the Secretary's findings are not supported by substantial evidence. Both parties have moved for Summary Judgment and have submitted well written and exhaustive briefs in support of their respective motions.

Plaintiff's first difficulty was an adenocarcinoma of the thyroid gland in 1953 followed in early 1954 by a radical neck resection. There seems little doubt that these surgical procedures removed such cancer as existed at the time; that

cancer, as such, has not returned to the plaintiff; but also that the radical neck resection left plaintiff with a weakened and impaired right arm.

Following these procedures, plaintiff underwent a tonsillectomy in 1955; suffered from retinitis in 1957; had a slight neck strain as a result of an automobile accident in 1957; had gastritis in 1957, and underwent surgery for cholecystitus in 1958, all of which she recovered from unremarkably and none of which, singly or in combination, resulted in a disability impairment.

In 1960, plaintiff was diagnosed as having multiple sclerosis, a disease from which she nows suffers and which now, without question, constitutes a disability impairment within the meaning of the Social Security Act. The difficult question in this case is not whether she is now disabled, but rather was she so disabled on September 30, 1956, the date all agree she last was eligible for benefits under the Act.

While counsel for plaintiff stipulated that his client was not impaired by the 1953 cancer, the court does not consider that he waived impairment as a residual effect of the radical neck resection in 1954, and will consider that impairment first.

The testimony of plaintiff, her husband and her neighbor as to functional impairment from the neck resection was generally that she could walk, drive an automobile, cook, and "everything in small amounts". She could not mop, vacuum or iron, but she could lift light objects. Plaintiff's earnings record showed wages earned in four different years after the resection, and substantial earnings in 1956. Plaintiff had voluntarily terminated her employment in January of 1952 because of her pregnancy with her second child, and made the statement in her June 1, 1961 application (T–186) that she "was not ill until 12/60. I haven't worked much in the last nine years because I was raising a family". The court, therefore, finds that there was substantial evidence to support the finding by the Secretary that plaintiff had not shown that she was disabled as of September 30, 1956 to perform any substantial, gainful activity as a result of the residual effects of the neck resection.

We turn now to a view of plaintiff's most serious complaint—multiple sclerosis. She was first diagnosed as having this disease by Exum Walker, M. D., who saw her on December 10, 1960. He stated that she first had symptoms of this disease in December of 1958, and that nothing in the record suggested that her symptoms pre-dated September 30, 1956, the cut-off date for eligibility under the Act. (T–250)

Records of plaintiff's treating physician, Dr. Frank K. Boland, Jr., tendered by plaintiff's counsel, reflect eighty seven (87) visits by plaintiff to Dr. Boland between October, 1953 and December, 1964, or an average of eight visits per year. His records reflect that he advised her to quit work on October 15, 1959, but she couldn't afford to quit. (T–234) Nothing in his records indicates that she complained of symptoms of multiple sclerosis until 1960, unless the sprained ankle in July, 1955 could be so considered.

Plaintiff was seen by Donald W. Paty, M. D., at the request of her counsel in February, 1970. After a thorough neurological evaluation, he found that her disease of multiple sclerosis definitely started in 1957, and that the symptoms she had such as weakness of ankles, unsteadiness with eyes closed and occasional falling were probably due to this disease. (T–238–239). He stated in a subsequent letter that "because of the extreme variability in symptoms in multiple sclerosis, we would find it hard, if not impossible, to assign a value to the disabling effects of symptoms without having observed or examined the patient during the period in question." (T–260)

At the request of the hearing examiner, Henry A. Brandt, M. D., examined the medical record and testimony at the hearing and concluded that symptoms

given by claimant as occurring prior to September 30, 1956, such as weakness, ankles giving way, falling, were generalized and non-specific in nature, and because of their intermittent occurrence would have suggested only a functional impairment of approximately ten percent of her activity. (T–246–247).

Plaintiff's counsel complains that subsequent to the hearing, he submitted some interrogatories to the hearing examiner to put to Dr. Brandt, and that he does not find their answers included in the record. We agree that counsel should have had these answers, but as they were the same questions that counsel put to his own medical expert, the court will assume that Dr. Brandt would have answered them exactly as counsel's expert did leaving no harmful error to claimant by this exclusion.

The voluminous record and well argued positions of both parties leave one critical question in this case. Were the symptoms of weakness in her right arm as a result of radical neck resection, and weakness of ankles and occasional falling as a result of early onset of multiple sclerosis such, as of September 30, 1956, as to disable plaintiff from engaging in any substantial gainful activity.

The mere presence of a disease is not in of itself disabling; it must be shown that the disease caused functional limitations. DeLoach v. Finch, (D.C.Va. 1970) 311 F.Supp. 903. In many cases, if not most, it is the symptoms that cause the disability, and not the disease itself. For instance, a cancerous tumor might be growing in the body for years before it symptomatically manifests itself. It would only be at that point in time when the manifestations caused disabling symptoms that eligibility for disability benefits would begin.

Plaintiff puts great weight in her argument on the use of a medical advisor (Dr. Brandt) to advise the examiner and interpret the medical evidence for him. This is a practice which has been roundly condemned in this Circuit, but which appears now to have been resolved. The

Supreme Court, in a case from this Circuit, said on May 3, 1971:

"The claimant, the District Court, and the Court of Appeals also criticize the use of Dr. Leavitt as a medical adviser. . . . Inasmuch as medical advisers are used in approximately 13% of disability claim hearings, comment as to this practice is indicated. We see nothing 'reprehensible' in this practice, as the claimant would describe it. The trial examiner is a layman; the medical adviser is a board-certified specialist. He is used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner. He is a neutral adviser. . . . He did offer his own opinion on the claimant's condition. That opinion, however, did not differ from the medical reports. Dr. Leavitt did not vouch for the accuracy of the facts assumed in the reports. . . . We see nothing unconstitutional or improper in the medical adviser concept. . . . " Richardson v. Perales, 402 U.S. 389, 91 S. Ct. 1420, 28 L.Ed.2d 842, 1971.

The use of the medical advisor in the instant case is not as critical as in the case above cited because he is not forced to choose between conflicting medical opinions. If Dr. Brandt's evidence is disregarded, we are still left with the statement of her own expert, "In our experience these vague symptoms may proceed the time of diagnosis of multiple sclerosis for years. . . . We cannot make any statement as to the degree of disability due to these symptoms. . . . Because of the extreme variability in symptoms in multiple sclerosis, we find it hard, if not impossible, to assign a value to the disability effect of symptoms without having observed or examined the patient during the period in question." (T–260).

This is a more difficult case to evaluate because the plaintiff voluntarily withdrew from the labor market because of pregnancy before her disability is alleged to have begun, and worked again

after the disability is alleged to have begun. This makes it difficult for plaintiff to sustain her burden of proof. See Patton v. Finch, (W.D.N.C.1969) 305 F. Supp. 810.

We find from a review of the entire record that there is substantial evidence to support the finding that plaintiff has not shown that she was so disabled on September 30, 1956 as to be unable to engage in any substantial gainful activity.

There is no question but what plaintiff now suffers from this desease, and that she is now totally disabled. It is hoped that she might find relief from some social welfare source, and while this Court is in complete sympathy with her present condition, it was well said in Patrick v. Finch (D.C.Ky., 1970) 312 F. Supp. 121:

"The award of [social security disability] benefits cannot rest upon imagination, speculation, conjecture, or sympathy—only credible proof in some form will suffice."

Accordingly, defendant's motion for Summary Judgment should be granted.