Verna M. WILLINGHAM, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE,
Defendant.

No. 73-817-Civ-JLK.

United States District Court,
S. D. Florida,
Miami Division.

June 25, 1974.

Stephen J. Press, Fla. Rural Legal Services, Inc., Belle Glade, Fla., for plaintiff.

Carol M. Anderson, Asst. U. S. Atty., Miami, Fla., Carl H. Harper, Regional Atty., Dept. of Health, Education and Welfare, Atlanta, Ga., for defendant.

ORDER OF REMAND

JAMES LAWRENCE KING, District Judge.

In this action now before the court on defendant's motion for summary judgment and the relief requested in the pleadings, plaintiff seeks review of a final decision of the Secretary of Health, Education and Welfare, which denied her claim for disability insurance benefits under the Social Security Act.[1] Mrs. Verna Willingham, a former nurse and waitress with a twelfth grade education, applied for benefits on June 2,

---

1. 42 U.S.C. §§ 416(i), 423 (1970).

1971, alleging that she became disabled due to a nervous condition in March 1961, and was thereafter unable to pursue her prior employment.

Upon the denial of her claim by the Appeals Council of the Social Security Administration, which approved the decision of an administrative law judge without opinion after considering additional evidence, plaintiff brought this timely action on May 11, 1973. The court has jurisdiction to review the Secretary's decision on the basis of the authority contained in section 205(g) of the Act.[2]

It appears from the administrative record that there is no dispute that plaintiff last met the special earnings requirements which are a precondition to eligibility for disability benefits on September 30, 1962. The evidence of record submitted by plaintiff to demonstrate that she suffered from a disability prior to that date is limited. Other than a report of a short period of hospitalization for pneumonia in 1961, the record contains only brief letters from two doctors and a copy of the chart maintained on plaintiff by one of them. Although the record further reflects that at various times subsequent to the date plaintiff last met the Act's eligibility requirement, psychiatric diagnoses revealed that she suffered from a serious mental disorder, that evidence was excluded from consideration by the agency.

In a brief letter dated May 3, 1971, Dr. Murphy stated that he treated plaintiff from March 3, 1961, to January 8, 1963, for "repeated nervous symptoms, migraine and allergies," and that "she was not able to work during this period of time."[3] The chart maintained for plaintiff by Dr. Murphy, although not before the administrative law judge, was considered by the Appeals Council which upheld his decision.[4] It indicates frequent consultations through April 1962, no small proportion of which were concerned with menopausal difficulties so far as it is possible to make out the chart's contents. Treatment consisted primarily of tranquilizers and hormone shots.

Dr. Romano, who had written on May 5, 1971, that plaintiff had been under his care "for the years 1955–1964 for the treatment of nerves"[5] expanded on his comments in a letter dated November 27, 1972, which was considered by the Appeals Council, but not by the administrative law judge.[6] In the second letter he stated that he had treated plaintiff "from 1955 to 1962," that she was "extremely nervous and apprehensive," and suffered from dizziness, nausea, vomiting and insomnia, and that she had been treated with "phenabarbital, Tuinal, Tigan, Demural and Leoprone."[7] He concluded that plaintiff "was unable to perform her usual activities and duties of life due to recurrent episodes of mixed neurosis."[8] Although Dr. Romano, unlike Dr. Murphy, is still living, plaintiff chose not to call him as a witness or to submit for the record more detailed evidence of the diagnostic findings which led him to his conclusion that plaintiff was disabled prior to her eligibility cut-off date.

In accordance with a Congressional mandate that the expertise of the administrative fact-finder be accorded priority, this court may disturb the Secretary's findings only when they are not "supported by substantial evidence."[9] In this case, the administrative law judge found as a fact that "the evidence fails to establish a medically determinable impairment (or combination of impairments) which would have precluded the claimant from doing her usual work prior to or at the time she last had in-

---

2.  42 U.S.C. § 405(g) (1970).

3.  Record at 105.

4.  Record at 5, 6, 170–86.

5.  Record at 106.

6.  Record at 6.

7.  Record at 187.

8.  *Id.*

9.  42 U.S.C. § 405(g) (1970).

sured status." [10] After considering additional evidence, the Appeals Council concurred in that judgment without opinion.[11]

The conceptual difficulty with such a "finding" is that the record contains no direct or substantial evidence whatsoever that *might* support the administrative view that plaintiff was *not* disabled prior to termination of her insured status. It might appear, therefore, that the Secretary's finding should be reversed because it is not "supported by substantial evidence." *See* Williams v. Finch, 440 F.2d 613 (5th Cir. 1971).

It is contended, however, that the administrative decision should be upheld because plaintiff failed to carry her burden of proof by demonstrating that prior to her 1962 eligibility cut-off date she suffered a disability within the meaning of the Act. This is the plain import of the administrative law judge's finding set forth above, and explains the fact that neither the law judge nor the Appeals Council considered it necessary to adduce for the record any evidence to contradict that presented by the claimant.

█ It is black letter law that the overall burden of proving disability under the Act rests upon the claimant. *E. g.* Hart v. Finch, 440 F.2d 1340; Hayes v. Celebrezze, 349 F.2d 651 (5th Cir. 1965). But to say this much is to obscure the more particular issue presented by this case.

█ It has long been recognized that "proof" is an ambiguous word, and that any "burden of proof" has as its elements a burden of production or going forward and a burden of persuasion.[12] It is said that although a plaintiff always has the burden of persuasion, which never shifts, he may produce sufficient evidence that his opponent's failure to adduce contradictory proof either may lead to a decision for plaintiff, or *must* lead to such a ruling.

Whether the law judge erred in not finding for claimant given the defendant's failure to produce any evidence is precisely the issue here. Some relevant evidence, if credited by the law judge, would more clearly have met the substantial evidence test this court must apply than no evidence at all.

In the absence of the production by defendant of any evidence for the administrative record, the court is squarely confronted with the conundrum of whether claimant failed to meet her burden of production, or whether the Secretary lacked substantial evidence for the conclusion that she was not entitled to benefits. The difficulty with agency determinations which leave the issue in such a posture is that they invite the parties upon review to tilt at windmills, each negativing the quality of the other's proof, after having neglected its own. Moreover, the proof of such negatives is an arcane science at best, and decisions forged from the incantation of such alchemy more often appear capriciously to transmute iron to brass than to gold.

The problem, ultimately, is to draw the line defining the quantum of proof required of a disability benefit claimant before the burden shifts to the Secretary to produce contradictory evidence of record to avoid a mandatory decision in the claimant's favor. Although the cases are not legion because of the agency's traditional solicitude for disability claimants, the production issue has arisen in two areas.

█ It now seems settled that once a claimant has demonstrated his inability to continue to engage in his former occupation, the burden of production shifts to the Secretary to show that there are other types of substantial gainful activity in the national economy which he could undertake. Jackson v. Richardson, 449 F.2d 1329 (5th Cir. 1972); Labee v. Cohen, 408 F.2d 998

---

10. Record at 15.

11. Record at 5, 6.

12. *E. g.*, C. McCormick, Handbook of the Law of Evidence § 306 (1954).

(5th Cir. 1969); Garrett v. Finch, 436 F.2d 15, 18 (6th Cir. 1970) (citing cases).

There can be no doubt that in enacting the Social Security Amendments of 1967,[13] Congress intended to curb judicial decisions burdening the Secretary with proof that suitable jobs were actually available within an ever narrower geographic area, and modified the statutory definition of disability accordingly.[14] In so amending the Act, however. Congress did nothing to foreclose the Secretary from presenting evidence that suitable jobs exist in the national economy which a claimant might perform. *See* Meneses v. Secretary of Health, Education and Welfare, 143 U.S.App.D.C. 81, 442 F.2d 803 (1971). Where the question of disability vel non is a close one, or medical evidence to contradict that presented by the claimant cannot be obtained, testimony that jobs are available in the national economy suitable for a person in the claimant's condition would be a particularly valuable part of the administrative record.

The burden of production issue may also arise in reviewing the threshold determination of whether a disability has been adequately established by an individual who seeks benefits. The question is how much medical evidence of what nature a claimant must submit before a decision in his favor would be required if the Secretary failed to produce contrary evidence. That fundamental issue is unavoidable here in the absence of any evidence that claimant could have performed jobs existing in the economy. Moreover, the question is squarely presented because the Secretary introduced no medical evidence at all into the record to dispute that produced by claimant.

■ Administrative determinations that a claimant has failed to meet the burden of producing medical evidence of disability pose difficulties for a reviewing court which are not insubstantial. Although the court must determine whether the applicable medical standard was correctly applied, it may neither reweigh the evidence nor second guess the administrative factfinder. Accordingly, no denial of benefits by the agency may be reversed if the factfinder could have decided that a disability had not been demonstrated, even though the evidence was arguably sufficient to support a decision in the claimant's favor. Rather, the administrative decision must be affirmed unless the medical evidence produced by the claimant was so compelling, in view of the applicable medical standard, as to mandate an administrative finding that the claimant was disabled.

Accordingly, the court's first task is to isolate the medical standard for the particular disability claimed against which the evidence must be weighed. Although they are not always themselves adequate, the general guidelines contained in the statute provide a point of departure. To be awarded benefits, every claimant must demonstrate that his inability to work results "by reason of any medically determinable physical or mental impairment." [15] The 1967 Amendments refined and tightened the standard by requiring that the claimed impairment result "from anatomical, physiological, or phychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." [16]

However definitive this statutory standard may appear, questions often arise about how it applies to the evidence submitted in support of the particular disability claimed. It is true enough that after careful consideration of the standard's application, courts have invoked only the statutory language to articulate their ultimate con-

---

13. Pub.L.No.90–248, § 158, 81 Stat. 833, amending 42 U.S.C. 423(d)(2)(A) (Supp. II, 1966).

14. U.S.Code Cong. & Admin.News pp. 2880–2883 (1967).

15. 42 U.S.C. § 423(d)(1)(A) (1970).

16. 42 U.S.C. § 423(d)(3) (1970) (emphasis added).

clusions. But we must reject the Secretary's suggestion that his determination may be affirmed without inquiry into the application of the standard, because to stop short of that task would be to abdicate the court's reviewing function.

The fact is that the amended Act makes more precise demands of a claimant's medical evidence than might be indicated by the general standard. It specifies that "an individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.[17] By implementing regulations subsequently issued,[18] the Secretary has detailed the threshold criteria for different types of impairments which must be satisfied by the medical evidence in order for a claimant to establish his right to benefits.[19] It is therefore incumbent on the court to insure that the criteria established for the claimed disability have been correctly applied to the evidence of record.

The administrative law judge found that plaintiff's primary complaint in this case was a "nervous condition,"[20] or as he elsewhere described it, a "psychiatric condition,"[21] although she had also alleged impairments from epileptic seizures, sugar diabetes, and arthritis of the knees and spine.[22] The medical criteria which must be met by the evidence of record to establish each of these four claimed impairments are separately enumerated in the administrative regulations.[23]

■ The three letters claimant submitted for the record from her treating doctors contain little medical evidence and no clinical findings. The unsupported conclusions set forth in each that Mrs. Willingham was completely disabled are not themselves determinative of the disability issue in the absence of accompanying laboratory and diagnostic findings.[24] Had the letters comprised the entirety of claimant's medical evidence, the court would have been compelled to affirm the Secretary's determination.

However, the record also contains the patient chart maintained on Mrs. Willingham by Dr. Murphy, who treated her during the years she was eligible for benefits. It was admitted into the record and considered by the Appeals Council. This fifteen page document, parts of which are illegible, is largely unintelligible to those who are not members of the medical profession. Although the court has previously summarized its apparent import as best it could, the Appeals Council having neglected to do so, the task is one for which the judiciary generally lacks an adequate level of expertise.

What concerns the court here is the fact that the administrative record nowhere contains an analysis of claimant's patient chart in terms of the applicable criteria set forth in the regulations as prerequisites to establishing the four impairments Mrs. Willingham alleged. The court is accordingly handicapped in performing its reviewing function because it cannot confirm that the criteria were correctly applied to the medical evidence produced.

To say this much is not to say, ipso facto, that the Secretary's determination should be reversed. Claimants, not the Secretary, bear the burden on review of persuading the court that an administra-

17. 42 U.S.C. § 423(d)(5) (1970).

18. 33 Fed.Reg. 11749 (Aug. 20, 1968).

19. 20 C.F.R. § 404.1501 et seq. (1973).

20. Record at 16.

21. Record at 15.

22. Record at 13.

23. 20 C.F.R. Subpart P, App. at 323–38 (1973). The criteria for establishing a mental impairment appear in § 12.00 of the appendix; for epilepsy, in § 11.00; for diabetes, in § 9.08 and for arthritis, in § 1.02. We note that epilepsy may be satisfactorily demonstrated by no more than the testimony of a reliable lay witness if professional observation is unavailable.

24. 20 C.F.R. § 404.1526 (1973).

tive decision in their favor is compelled by the evidence. Although plaintiff could have submitted an explanation of how the evidence in her patient chart satisfies the medical criteria prescribed by agency regulations, she has made no such effort to demonstrate that she was erroneously denied disability benefits. The court therefore finds it difficult to conclude that the patient chart contains such compelling evidence as to have made an administrative finding in claimant's favor mandatory.

Moreover, we cannot ignore the fact that Mrs. Willingham, whose eligibility for benefits terminated in 1962, waited until 1970 to file her first disability application. As a result of that eight-year delay, the Secretary was effectively precluded from producing direct medical evidence about her condition during the time she remained eligible which could have disputed that which she herself supplied. Accordingly, there is some force to the concern that claimant should not benefit from an ambiguity in the evidence which she had the burden and the opportunity to clarify.

We do not mean to imply that plaintiff's delay in seeking disability benefits would justify holding her to a greater burden of production than that of other claimants. The fact is that the burden for all claimants is a heavy one, however ill-defined it may be. In a decision which is instructive on the question of reversal here, the Fifth Circuit itself had occasion to comment on the "strict standards for proof of disability exacted by the amended Act" and the fact that reversals of agency decisions now "are very rare." Williams v. Finch, 440 F.2d at 615.

Although the filing of the claim at issue in the *Williams* case was long delayed, as it was here, two factors not present in this case there mandated reversal of the agency decision to deny benefits, even under the strict standards of proof which were applied. First, the adverse effect of Williams' six-year delay in filing his claim on the Secretary's ability to secure contrary medical evidence was mitigated by the fact that he had filed two prior unsuccessful applications, one within a year of the onset of his disability. Secondly, as the Fifth Circuit emphasized in reversing the agency ruling, Williams' condition was so pronounced that four doctors had concurred in the diagnosis that he was disabled to some extent, that the Veterans Administration had determined that he was completely disabled, and that the Social Security Administration itself had found his impairment too severe for vocational rehabilitation. 440 F.2d at 615–616 & n. 4.

How inadequately Mrs. Willingham met her burden of producing evidence becomes readily apparent by comparison. Having failed to adduce testimony of the sole surviving doctor who had treated her when she was eligible for benefits, she sought to support her claim with no more than two conclusory letters about her condition at that time along with an uninterpreted patient chart. Considered in its entirety, the evidence plaintiff presented may have been sufficient to permit an administrative finding in her favor given the absence of contrary evidence. But the court cannot say that claimant's evidence was so substantial on this record as to have compelled an agency finding that she was disabled. For that reason reversal is not merited.

The next question which must be considered is whether plaintiff's alternative prayer for a remand should be granted, or whether the Secretary's determination should instead be affirmed. We think it clear that the agency might, and certainly should have supplemented the evidence with some input of its own into the record. Hypothetical questions designed to elicit claimant's condition at the time of her eligibility could have been put to a medical expert appraised of the contents of her patient chart. At the very least, testimony might have been adduced to clarify the chart's contents with respect to the criteria in the regulations for establishing a disability. Moreover, if efforts to obtain medical evidence had proved unavailing, testimo-

ny concerning the availability of jobs in the national economy to a person in claimant's former condition could have been provided.

Although these deficiencies may appear little more than minor flaws in the record, they make it difficult for a court conscientiously to affirm the Secretary's decision. We are cognizant of the rule that "we may neither reweigh the evidence nor substitute our judgment for that of the Secretary." Williams v. Finch, 440 F.2d at 615. Yet to place the court's seal of approval on a record so lacking in substantial evidence to support the administrative ruling as this one would entail "abdicat[ing] our traditional judicial function of scrutinizing the record as a whole to determine the reasonableness of the decision reached." Id. Accordingly, if for no other reason than to secure an interpretation of plaintiff's patient chart, we find ourselves compelled to remand this case for clarification and amplification of the record.

■ Even if the court did not find a remand necessary because of the inadequacies in this record, the same result would be compelled by the fact that the agency made a fundamental error of law in reaching its determination. The record reveals that the administrative law judge erroneously thought it unnecessary to consider certain psychiatric evidence plaintiff had submitted because those "diagnoses were rendered subsequent to the crucial period in which the claimant must establish her disability.[25] The agency has continued to assert on this appeal that the Act forecloses consideration of medical diagnoses made after a claimant's eligibility period terminates.

The diagnoses which the agency failed to consider defined plaintiff's condition subsequent to the time she last met the Act's eligibility requirements as one manifesting a serious mental disorder. The law judge explained that he was "convinced that, as the claimant alleges, her primary impairment is a psychiatric condition, which has been diagnosed at various times as 'acute psychosis,' 'involutional psychotic reaction,' 'cronic undifferentiated schizophrenia,' 'chronic anxiety,' and 'acute depressive reaction.'[26] We think it apparent from this statement that the law judge would have taken the psychiatric diagnoses into account had he not mistakenly believed that the Act precluded him from doing so. Because the statute contains no such prohibition, the court will remand to give him that opportunity.

■ There can be no question that the Act strictly limits its benefits to those who become disabled during the eligibility period defined by their prior quarters of earnings, in accordance with their payroll contributions to the program.[27] However, the cases upon which the Secretary relies do not support the contention that the agency may ignore all medical evidence other than that which is contemporaneous with the period during which a claimant remained eligible for benefits.

■ It is quite correct that the Act's eligibility provision prevents those claimants from obtaining benefits who cannot provide evidence that the condition they suffered while they remained eligible was a medically demonstrable impairment. E. g. Kirkland v. Weinberger, 480 F.2d 46 (5th Cir. 1973). Because the Act further requires that a demonstrable impairment be disabling, if an impairment which is medically demonstrable during the eligibility period did not then disable the claimant from substantial gainful employment in the national economy, no benefits can be awarded. Johnson v. Finch, 437 F.2d 1321 (10th Cir. 1971). It follows that where a claimant had a demonstrable impairment that disabled him from gainful employment, but recovered from it prior to the end of his eligibility period, evidence that a recurrence of the

25. Record at 15.

26. *Id.*

27. 42 U.S.C. § 416(i) (1970).

same impairment thereafter again disabled him may not be considered by the Secretary. DeNafo v. Finch, 436 F.2d 737 (3d Cir. 1971); *cf.* Patton v. Finch, 305 F.Supp. 810 (W.D.N.C.1969).

■ A further corollary of the Act's eligibility provision applicable to the statutory requirement that an impairment be medically demonstrable appears to be the source of the error committed here. Where there is no evidence of record that a claimant ever suffered from a given condition during his eligibility period, the subsequent appearance of that condition cannot serve as a basis for an award of benefits, no matter how persuasive the evidence that it was a medically demonstrable impairment. Seals v. Gardner, 356 F.2d 508 (5th Cir. 1966).

However, the validity of this proposition does not guarantee that its logical inverse is equally true, as the Secretary has assumed. Where, as here, there exists some evidence of record that a claimant suffered from a given condition while eligible for benefits, a showing that subsequently obtained evidence made the condition medically demonstrable may be entirely relevant to the existence of a prior impairment, and must be considered by the agency.

We state no more than the obvious: A claimant's total medical history is pertinent to a determination of whether he was disabled during the period when he was eligible for benefits. To posit any other rule would be contrary to the experience of modern medical science which has found that mental and physical diseases may not always be immediately susceptible to diagnostic confirmation. Accordingly, the few courts to have considered the question have ruled that the agency must consider subsequent evidence that a condition shown to exist during the eligibility period constituted a medically demonstrable impairment. Moore v. Finch, 418 F.2d 1224 (4th Cir. 1979); Mann v. Richardson, 323 F.Supp. 175 (S.D.N.Y.1971); *cf.* Berven v. Gardner, 414 F.2d 857 (8th Cir. 1969).

Although we hold that the Secretary must consider subsequent diagnoses of an impairment which manifested itself during a claimant's eligibility period, we do not intimate any view of the weight to be given such evidence. In some instances, there may be a basis for discounting it, as when an impairment is known to have a progressively incapacitating effect on the ability to engage in substantial gainful employment, and a considerable time has elapsed between the expiration of a claimant's eligibility period and the date of the proffered clinical or diagnostic evidence. This is a determination to be left to the Secretary because it concerns a matter solely within the province of agency expertise. Consequently, we must remand this case to permit agency consideration of the psychiatric diagnoses in the record of plaintiff's condition after her eligibility period terminated.

It remains only to note that the Secretary has advanced a final argument in support of his determination for the first time on this appeal. It is now contended that Mrs. Willingham failed to meet the Act's threshold requirement that she file her application for benefits within fourteen months of the end of a continuous period of disability which began when she met the program's eligibility requirements.[28]

We are told that plaintiff's claimed disability did not qualify as a continuous one because "plaintiff has admitted through her attorney that she was not disabled from March 1965 to 1968 by requesting a closed period of disability from June 1960 to March 1965 and a new period in 1968."[29]

This court is not without serious doubts that an admission by an attorney representing a disability claimant before the Social Security Administration should be construed to effect a complete

---

28. 42 U.S.C. §§ 416(i)(2)(E), 423(a)(1)(D) (1970).

29. Brief for Defendant at 9.

waiver of his client's rights, absent affirmative evidence that the claimant knowingly and intelligently authorized the admission. To conclude that an attorney's admission could bind a social security claimant, whatever the circumstances, would be antithetical to the solicitude manifested by the Act for protecting the interests of benefit applicants by means of informal procedures and proceedings comprehensible to a layman unskilled in the law.

█ Yet even if it could be argued persuasively that plaintiff should be bound by the alleged admission, that question is not now properly before this court. It appears from the record that a factual issue exists as to whether plaintiff's attorney ever made the admission now attributed to him.[30] The administrative law judge having made no finding on the question,[31] it is beyond the court's province to determine the matter de novo.[32] Should the Secretary wish to press this contention, he will have an opportunity to do so on remand.

For the reasons previously set forth, defendant's motion for summary judgment must be denied and the case remanded with directions. Therefore, it is

ORDERED and ADJUDGED that defendant's motion for summary judgment be and the same is hereby denied; it is further,

ORDERED and ADJUDGED that the above-styled action be and the same is hereby remanded to the Secretary of Health, Education and Welfare in accordance with this opinion with directions to supplement the record with evidence clarifying the contents of plaintiff's patient chart in light of the criteria set for by regulation for establishing a disability, to consider the diagnoses of plaintiff's mental condition obtained after plaintiff last met the eligibility requirements of the Act, and to take such other evidence as he deems it reasonable and proper to consider.

30. Scrutiny of the record reveals two factual problems with the Secretary's assertion that by seeking a closed period of disability *after* she last met the Act's eligibility requirements in 1962, plaintiff's attorney defeated her claim.

The first is the question of whether the closed period actually requested was to come after 1962, as the Secretary suggests in reliance on an undated "Report of Contact" made by the agency with plaintiff's attorney, or whether the closed period sought was to be prior to or coterminous with the date plaintiff was last eligible for benefits, as indicated by the dismissal order entered on her prior application for benefits, Record at 73, and by a statement of her attorney. Record at 98. A request for a closed period of disability during the time plaintiff remained eligible would not have called the continuity of her disability into question. Moreover, had it been granted, the resulting "freeze" would have had the effect of extending her eligibility period to a later date when better medical evidence was available to substantiate her claim.

Even if it were found that the closed period was to come after plaintiff lost her eligibility for benefits, a second factual issue must be resolved: whether claimant's attorney ever admitted that she was not disabled between March 1964 and February 1968. In answering that question, the following statement by plaintiff's attorney appearing in the record cannot be overlooked:

"She did do work after this [March 1964] but was not working regularly. This work was sporadic. *She was disabled.*
Record at 98 (emphasis added).

31. In the hearing before the administrative law judge, at which claimant was represented by an attorney other than the one alleged to have made the admission, the issue was neither raised nor considered.

32. 42 U.S.C. § 405(g) (1970) construed in Alsobrooks v. Gardner, 357 F.2d 110 (5th Cir. 1966), reh. denied, 394 F.2d 985 (5th Cir. 1968).