Stanley Gartenstein, J.
The within child protective pro *901 ceeding attacks the constitutionality of certain key provisions of article 10 of the Family Court Act, the so-called "Children’s Bill of Rights” dealing with neglected and abused children.
Three children are alleged to be abused: John, born May 2, 1975; Izquierdo, born March 23, 1974; and Virgin, born September 21, 1972. John is alleged to be the "target child” and the two older children are claimed to be abused on the theory that upon removal of a "target child,” the focus of the abuse shifts to other children. This theory, a working tool of social workers and psychologists, has received formal legal recognition. (Matter of Edwards, 70 Misc 2d 858; Family Ct Act, § 1046, subd [a], par [i].)
THE FACTS
On August 9, 1975, three-month-old John was admitted to Jacobi Hospital by his mother, a respondent herein. She gave an admitting history of having found him unconscious on the floor with his sister Virgin standing over him. When mouth-to-mouth resuscitation failed, a neighbor was summoned and an ambulance called.
The admitting physician testified that on initial examination, John was in a tonic state of seizure and unresponsive, consistent with traumatic head injuries. Intravenous valium brought on a response after which the infant was treated for subdural hematomas on both sides of the head; linear fracture of the skull; retinal hemorrhage; and bruises on both cheeks and the lower left portion of the abdomen. The only explanation of these injuries was the possibility that Virgin, in a fit of jealousy, threw him to the floor and beat him.[1]
It is undisputed that the third child was in Camden, New Jersey, with his father when the injuries occurred. The father was named as a respondent, but no case against him was presented.
On August 12, 1975, the court ordered an emergency removal of all children. Virgin was returned pending trial in subsequent proceedings and the two younger children are still at the New York Foundling Hospital pending disposition of this cause on its merits.
The unexplained injuries to John constitute the entire case.
*902 PERTINENT STATUTES:
Subdivision (a) of section 1046 of the Family Court Act states: "In any hearing under this article [art 10] * * * (ii) proof of injuries sustained by a child or of the condition of a child of such nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the care of such child shall be prima facie evidence of child abuse or neglect, as the case may be, of the parent or other person legally responsible”.
Subdivision (b) of section 1046 states: "In a fact-finding hearing (i) any determination that the child is an abused or neglected child must be based on a preponderance of the evidence”.
CONSTITUTIONAL ATTACK
Respondent mother moves for dismissal of the petition and return of her children arguing that with the entire case resting on the presumption established by section 1046 (subd [a], par [ii]) of the Family Court Act, a finding of abuse in reliance on this presumption would deprive her of her constitutionally guaranteed right to her children without due process of law. It is further argued that both section 1046 (subd [a], par [ii]) which establishes this presumption, as well as section 1046 (subd [b], par [i]) which establishes a preponderance of evidence as the measure of proof are unconstitutional on their face and must be struck down by the trial court even recognizing the traditional injunction to trial courts to exercise restraint on constitutional issues in deference to courts of appeal (see National Psychological Assn. for Psychoanalysis v University of State of N. Y., 18 Miscc d 722, affd 10 AD2d 688, affd 8 NY2d 197, app dsmd 365 US 298).
Faced with this constitutional challenge, the court as required by CPLR 1012 (subd [b]), has given notice to the Attorney-General of the State of New York who has appeared pro se in defense of the statute.
CONSTITUTIONALITY: PROVINCE OF TRIAL COURT V APPELLATE COURT
It has been long settled in New York that an enactment of the Legislature is presumed constitutional and will be struck down only when its "unconstitutionality is shown beyond a reasonable doubt”. (Defiance Milk Prods. Co. v Du Mond, 309 *903 NY 537, 541; accord Nettleton Co. v Diamond, 27 NY2d 182, app dsmd sub nom. Reptile Prods. Assn. v Diamond, 401 US 969.)
The limited power of trial courts to strike down a State statute as unconstitutional has been stated repeatedly. The court, in People v Estrada (80 Misc 2d 608, 610) stated: " 'Particularly, courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases where life and liberty is involved and the invalidity of the act is apparent on its face’ (National Psychological Assn. v. University of the State of N. Y., 18 Misc 2d 722, 725-726, affd. 10 AD 2d 688, affd. 8 NY 2d 197, app. dsmd. 365 U. S. 298). Courts of original jurisdiction should not set aside a statute as unconstitutional unless that conclusion is inescapable. (People v. Elkin, 196 Misc. 188; Bolhing v. Corsi, 204 Misc. 788, affd. 306 N. Y. 815.) The tendency is to leave such questions to appellate tribunals (City of New Rochelle v. Ecko Bay Waterfront Corp., 182 Misc. 176, affd. 268 App. Div. 182, affd. 194 N. Y.).” (People v Lofton, 81 Misc 2d 572; Dunbar v Dunbar, 80 Misc 2d 744.)
It is clear that while trial courts are thus enjoined from reaching for an issue of constitutionality, or from considering it when any other basis exists, that when unavoidably confronted with the issue, they are morally and legally bound to consider it and rule accordingly.
The court finds that it has no choice, but to rule on the issue of constitutional validity which squarely confronts it. No direct evidence of abuse is before the court. The injuries are consistent only with sustained widespread assault and by themselves negate the possibility of a "single-fall” or a "flash-beating” administered by a jealous three-year old’s physical capabilities. Moreover, even conceding the mother’s explanation and assigning unwarranted credibility to it, her sheer act of leaving the baby in a position where this or similar injuries could be proximately anticipated shows her actions wanting of that standard of care required by law. In either event, the existence of the statutory presumption is crucial to a finding of abuse or neglect.
MATTER OF ALSAGER
Before moving on to a consideration of constitutionality, reference must be made to what is rapidly becoming the most cited case on this issue in recent years. That this holding may *904 bear staggering ramifications in this State is illustrated by the fact that all parties to this litigation make reference thereto; and by the further fact that certain definitions of neglect which were struck down therein bear resemblance to definitions contained in article 10 and elsewhere.
In 1975, the United States District Court for the. Southern District of Iowa was presented with a constitutional challenge to the Iowa statute dealing with termination of parental rights (Matter of Alsager v District Ct. of Polk County, Iowa, 406 F Supp 10). This challenge had been presented in prior proceedings (384 F Supp 643) in which the District Court declined to rule thereon until remand by the Circuit Court of Appeals (518 F2d 1160) with an appropriate direction. In holding the Iowa statute unconstitutional, the Alsager court relied upon (A) its defective vagueness and the fact that the Iowa Supreme Court had never judicially restricted its application; and, (B) its failure to accord procedural due process in requiring "clear and convincing evidence” as opposed to the "preponderance standard then in effect.”
Further consideration of this holding will appear herein when appropriate. It is germane to note however that while section 1046 (subd [b], par [i]) of the Family Court Act establishes the "preponderance” standard, the Appellate Division of the First Department in an opinion subsequent to Alsager, appeared to be judicially approving the more restrictive Al-sager standard by requiring "strong and convincing proof of unfitness on the part of the parent”. (Matter of Gonzalez, 51 AD2d 527.) It is as yet impossible to ascertain whether or not the First Department was responding to Alsager, whatever its ultimate result on appeal, and/or whether or not it even considered same.[2]
CHILD ABUSE STATUTES — HISTORY
Probably the most disturbing manifestation of today’s society — the underlying malaise is the affluent; the instinct toward violence in the "have-nots” — is the almost epidemic increase of child abuse of the 1960’s. This tragedy reached public awareness in 1969 with the brutal murder of six-year-old Roxanne Felumero, which jolted all branches of government into response to the existing emergency (see Report of the Judiciary Relations Committee on the Handling of the *905 Roxanne Felumero Case, Appellate Division, 1st Dept., June 19, 1969).
Responding to the obvious crisis, the Legislature, acting upon recommendations of the newly created Select Committee on Child Abuse of the Assembly (hereinafter referred to as Select Committee) enacted a revised and enlarged article 10 (child protective proceedings) which supplanted and consolidated all prior enactments (L 1969, ch 264).
The problem of balancing traditional standards of fairness and guaranteed rights of procedural and substantive due process with the need to address this most brutal of acts usually committed behind closed doors upon defenseless children incapable of verbalizing what took place was uppermost in the mind of the Legislature and was best expressed in the 1972 Report of the Select Committee (p iv): "the final document represented a consensus of what was considered the best means to help assure the protection of abused and neglected children while providing procedural and substantive fairness to the parents.”
While the then newly enacted article 10 presented questions and difficulties in its application[3] subsequent amendments thereto came with regularity in succeeding sessions. It is claimed that each of these, benign in its own right as an instrumentality of combatting child abuse, when taken as a totality, place intolerable burdens on due process of law guaranteed to parents. The heart of these enactments may be stated to be section 1046 which contains provisions as to applicable rules of evidence and required standards of proof. Both provisions under constitutional attack are therein contained.
THE SO-CALLED "RES IPSA” PRESUMPTION
A step back from the statute in order to view its terms in their proper historical and semantic background is most appropriate and enlightening.
*906 As pointed out by the Select Committee, the enactment of article 10 was in many ways a consolidation and recodification of existing law. That this appears to be so concerning the section in issue is attested to by the fact that this so-called "presumption” was in existence long before the new statute or even the legislative committee which recommended its passage. In Matter of S. (46 Misc 2d 161, 162), the Honorablé Harold A. Felix concluded that the child’s injury was such that "in the ordinary course of things does not happen”. In Matter of Young (50 Misc 2d 271) the court discounted testimony of the child’s mother as to the alleged cause of a fractured arm and made a finding of neglect relying on the unexplained injuries.
The cornerstone of the constitutional attack on this statute codifying prior decisions is the claim that it in effect changes the classic burden of proof in any given case away from the proponent of the original litigation and establishes a prima facie case which a parent must meet else his crucial right to preservation of his family unit will be diminished or destroyed.
As the Attorney-General points out, the concept "burden of proof’ has two elements: (1) the burden of production of or of going forward with evidence and (2) the burden of persuasion. A plaintiff always bears the burden of persuasion, which never shifts. (Willingham v Secretary of Health, Educ. Welfare, 377 F Supp 1254; 9 Wigmore, Evidence [3d ed, 1940], §§ 2483-2489.)
The concept "prima facie” has been used in two senses. In one, it connotes a presumption created by evidence introduced by a plaintiff. If the defendant then introduces no evidence, the plaintiff is entitled to judgment in his favor. The term is also used to connote a state in which a plaintiff has satisfied his burden of production. Regardless of what evidence the defendant then produces, the trier of the facts must still determine whether the plaintiff has met his burden of persuasion. (9 Wigmore, Evidence [3d ed, 1940], § 2494.)
In Mobile, Jackson & Kansas City R. R. Co. v Turnipseed (219 US 35), the court used the term "prima facie” in the first sense, thus equating the establishment of a prima facie case with establishment of facts necessary to create a rebuttable presumption. (See Lindsley v Natural Carbonic Gas Co., 220 US 61; Bandini Co. v Superior Ct., 284 US 8.)
In Matter of Tashyne L. (53 AD2d 629, the Appellate *907 Division, Second Department, interpreted section 1046 (subd [a], par [ii]) of the Family Court Act to come within this usage of the term "prima facie” holding that the burden of coming forward shifts to a respondent once the statutory conditions are met.
This holding of the Second Department is far from unique, nor does it depart from established law. It has long been settled in New York as a general rule of evidence that where a defendant "has knowledge of a fact but slight evidence is requisite to shift on him the burden of explanation” (Griffen v Manice, 166 NY 188, 194; Noseworthy v City of New York, 298 NY 76; see Campbell v United States, 365 US 85, 96; Nader v Allegheny Airlines, 512 F2d 527).
Viewed in light of the above, section 1046 (subd [a], par [ii]) guarantees even more protection to a respondent in that it requires more than "but slight evidence” to shift to the parents the burden of coming forward with an explanation of their child’s injuries. The standard required is "proof of injuries * * * as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent”.
Thus, section 1046 (subd [a], par [ii]) must be considered a rebuttable presumption which does not alter the ultimate burden of proof. (Matter of Tashyne L., supra.) It has been long settled that such presumptions do not offend the Fourteenth Amendment to the United States Constitution.
As early as Mobile, Jackson & Kansas City R. R. Co. v Turnipseed (219 US 35, 42-43, supra), the court, in upholding a statute that created a rebuttable presumption, stated:
"Legislation providing that proof of one fact shall constitute prima facie evidence of the main fact in issue is but to enact a rule of evidence, and quite within the general power of government. Statutes, National and state, dealing with such methods of proof in both civil and criminal cases abound, and the decisions upholding them are numerous. * * *
"That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate *908 to preclude the party from the right to present his defense to the main fact thus presumed.”
Similarly, in Lindsley v National Carbonic Gas Co. (220 US 61, 81-82, supra), the court stated: "Each state possesses the general power to prescribe the evidence which shall be received and the effect which shall be given to it in her own courts, and may exert this power by providing that proof of a particular fact, or of several taken collectively, shall be prima facie evidence of another fact. Many such exertions of this power are shown in the legislation of the several States, and their validity, as against the present objection, has been uniformly recognized save where they have been found to be merely arbitrary mandates or to discriminate invidiously between different persons in substantially the same situation.” (Accord Bandini Co. v Superior Ct., 284 US 8, supra; Luria v United States, 231 US 9; Reitler v Harris, 223 US 437; see, also, Speiser v Randall, 357 US 513, 523-524.)
In Matter of Sanford v Rockefeller (35 NY2d 547, app dsmd sub nom. Sanford v Carey, 421 US 973), the court upheld a rebuttable presumption in the Taylor Law that an employee absent from work during a work-stoppage was deemed to be on strike since it had a "supporting foundation in the probabilities” and the proof was peculiarly accessible to the employee. The court emphasized that due process was not violated by shifting the burden of production where otherwise the employer would have to establish a negative proposition under "considerable practical handicaps as to access to relevant evidence.” (35 NY2d, at 555.) Identical reasoning founded in the accessibility of evidence of child abuse only to abusing parents must be held to support the statute under attack.
The court therefore holds in accordance with the foregoing[4] that the statutory presumption created by section 1046 (subd *909 [a], par [ii]) of the Family Court Act does not offend constitutional standards of due process and that this statutory provision is not unconstitutional on its face.
THE "PREPONDERANCE” STANDARD — CONSTITUTIONALITY
Respondent mother, as corollary to the prime attack on the statute, also seeks a declaration of unconstitutionality as to section 1046 (subd [b], par [i]) of the Family Court Act which legislates the "preponderance” standard as the measure of persuasion. She reasons, as does Alsager (406 F Supp 10, supra), that the sanctity of the family is protected by such constitutional guarantees that nothing less than clear and convincing proof may be accepted by the court as the standard needed to prevail. In point of fact, every case relied upon by respondent is cited by the Alsager court. It is in fact impossible to dispute the basic premise concerning sanctity of the family. But it does not follow therefrom — and, it is respectfully submitted that Alsager’s reasoning breaks down at this point — that the State may not intervene for a compelling State interest, viz., protection of children. Nor does it follow that in so intervening, a State may not set whatever burden of ultimate persuasion it sees fit. The United States Supreme Court has directly held the duty of intervention for protection of children to exist in Stanley v Illinois (405 US 645, 652): "We do not question the assertion that neglectful parents may be separated from their children.”
In this connection, it is relevant to note that the Alsager court, in determining that the "preponderance” standard is constitutionally defective, relied upon Matter of Winship (397 US 358). The import of Matter of Winship must logically depend on the Supreme Court’s view of it and what it held. Thus in Lego v Twomey (404 US 477) the court upheld the right of a State Legislature to mandate the burden of persuasion required to determine the admissibility of evidence challenged as unconstitutionally obtained in a criminal trial. In permitting a "preponderance of the evidence” standard, the court explained that Matter of Winship (supra) "went no further than to confirm the fundamental right that protects 'the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.’ Id. at 364.” (404 US, at 486.) The court further explained that no showing had been made that "admissibility rulings have been unreliable or otherwise *910 wanting in quality because not based on some higher standard.” (404 US, at 488.)
The reliance on Winship by the Alsager court for the proposition that the "preponderance” standard is insufficient appears therefore to be at variance with the Supreme Courts’ own understanding of its holding in Winship. There is as yet, Alsager to the contrary, no crucial showing as required by Lego (p 488) that this standard has been "unreliable or otherwise wanting in quality”.
Consideration must therefore return to the classic holdings concerning a State’s right to establish its own standards for the ultimate burden of persuasion. In Lavine v Milne (424 US 577, 585), the court addressed this problem and stated that "[ojutside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment.” (See Lindsley v Natural Carbonic Gas Co., 220 US 61, supra; Bandini Co. v Superior Ct., 284 US 8, supra.)
The Court of Appeals has found that the Legislature, without offense to the Constitution, may change the burden of persuasion required by the prosecution in the adjudication of traffic infractions. (Matter of Rosenthal v Hartnett, 36 NY2d 269.) According to this holding, the wisdom of the legislative determination is not a matter for the courts.
Finally, Alsager may be distinguished by its own terms from emergency child protective proceedings as are in issue herein; As to child protective provisions, it states: "The court’s ruling today as to the adequacy of Iowa’s termination standards is in no way intended to restrict the state’s ability to take swift action when necessary to prevent imminent harm or suffering to a child. * * * Accordingly, the Court deems that termination proceedings should be distinguished from immediate removal proceedings for purposes of substantive due process analysis.” (406 F Supp, at 22.)
The court holds that the statutory "preponderance” standard contained in section 1046 (subd [b], par [i]) of .the Family Court Act is not unconstitutional on its face.
CONCLUSIONS AND ORDER
The court has carefully weighed the foregoing. It concludes:
A. That the injuries to the child John have not been explained satisfactorily.
*911 B. That a prima facie case of child abuse has thus been established (Family Ct Act, § 1046, subd [a], par [ii]) by a preponderance of the evidence (Family Ct Act, § 1046, subd M).
C. That the existence of the statutory presumption created by section 1046 (subd [a], par [ii]) of the Family Court Act is crucial to this holding as is the preponderance of evidence standard enacted by section 1046 (subd [b], par [i]) of the Family Court Act and that it is thus impossible to arrive at this result without consideration, even as a trial court, of constitutionality.
D. That constitutionality having been unavoidably considered by the trial court is upheld.
E. That as a result of the foregoing the child John is adjudicated an abused child.
F. That the children Izquierdo and Virgin are adjudicated as abused children (Family Ct Act, § 1046).
G. That the petition as against the respondent father has not been proven and is dismissed.
H. Investigation and report by petitioner are ordered and all paroles and remands shall remain in effect pending the scheduled adjourned date.
AUXILIARY CONSIDERATIONS
This decision has been reached, as mandated by traditional judicial restraint, on the narrowest of grounds. It makes no adjudication as to the constitutionality of those definitions of neglect as contained in section 1012 of the Family Court Act which are in apparent conflict with Matter of Alsager (406 F Supp 10, supra), whatever its ultimate effect will be. Nor does this decision address itself to any constitutional attack centering on the application and/or enforcement of the law as distinguished from its terms on its face. Those issues will have to stand if and when properly raised on far more substantial grounds.
Finally the court must note with great satisfaction the privilege it has had in considering arguments from all sides which were uniformly probing and thought provoking.

. A condition of elevated alkaline phosphatase in John’s blood accompanied by a claim that this predisposed him to fractures was discounted by the admitting physician.

. A short Per Curiam opinion made no reference thereto.

. See Matter of Three "John” Children (61 Misc 2d 347); Committee on the Family Court and Family Law, The Enactment of the Abused Child Law and Committee Findings as to Defects in the Law, Record of Assn of the Bar of City of New York [vol 24, No. 6, p 347, June, 1969]; Comment, New York’s Child Abuse Laws: Inadequacies in the Present Statutory Structure, 55 Cornell L Rev 298; Honorable Nanette Dembitz, Child Abuse and the Law-Fact and Fiction, Record of Assn of the Bar of City of New York [vol 24, No. 9, p 613, Dec., 1969]; all cited in 1972 Report of Select Committee on Child Abuse, p iii.

. An additional possibility stems from an argument that the Appellate Division, First Department, intended to judicially require more than the "preponderance” standard of subdivision (b) of section 1046 of the Family Court Act by virtue of its holding in Matter of Gonzalez (51 AD2d 527). Assuming arguendo this to be true, the "clear and convincing” standard if indeed now in effect, would fall somewhere in between that of a "preponderance” and the most restrictive standard applicable to criminal proceedings, that of "beyond a reasonable doubt.” Even as to this standard applicable in criminal proceedings, the use of a presumption placing a burden of production on a criminal defendant has been constitutionally upheld. (People v Felder, 39 AD2d 373; Tot v United States, 319 US 463; Leary v United States, 395 US 6; Turner v United States, 396 US 398.) There should accordingly be no doubt as to the use of presumptions even if the standard is "clear and convincing” evidence.