**THIRD CENTURY RECYCLING, INC., Plaintiff,**

v.

**BANK OF BARODA, Defendant.**

**No. 87 Civ. 3997 (RWS).**

United States District Court, S.D. New York.

Jan. 12, 1989.

---

Hill, Betts & Nash, New York City, for plaintiff; Jonathan L. Kotlier, of counsel.

Di Nardo & Co., P.C., New York City, for defendant; Kurt Dinkelmeyer, of counsel.

## OPINION

SWEET, District Judge.

Both parties, plaintiff Third Century Recycling, Inc. ("Third Century") and defendant Bank of Baroda (the "Bank") have moved for summary judgment under Rule 56, F.R.Civ.P., Third Century for the amount of $58,116.65, the amount of four checks dishonored by the Bank, and the Bank to dismiss Third Century's complaint seeking recover of the checks issued on the account of its customer and the Bank's depositor Sordelli Plastics Inc. ("Sordelli"). On the facts and conclusions set forth below, Third Century's motion is granted the Bank's motion is denied.

### Prior Proceedings

The complaint was filed on June 9, 1987. Discovery has been completed. The instant motions were heard and submitted on October 21, 1988.

### The Facts

While there is no dispute about certain facts, the parties are in sharp disagreement as to the inferences and conclusions to be drawn from these facts. Sordelli, an export broker dealing in paperwaste products, owed substantial sums to Third Century, a Connecticut corporation exporting paperwaste products. Sordelli gave to Third Century checks, drawn on its account at the Bank in payment for goods received. On occasion, Third Century was requested to hold these checks prior to presentment. Certain of the Sordelli checks were appropriately dishonored. Sordelli has filed in bankruptcy.

The four checks at issue here were issued by Sordelli, delivered to Third Century, deposited in Third Century's bank, the Bank of Boston Connecticut ("Bank of Boston"), forwarded to the New York Clearing House (the "Clearing House") for collection, delivered to the Bank, and then dishonored by notice to the Clearing House. The numbers and amounts of the checks, their delivery dates to the Bank and the dates of their dishonor are set forth below:

| Check No. | Amount | Delivery to the Bank | Dishonored |
|---|---|---|---|
| 8311 | $10,744.00 | 1/20/87 | 1/23/87 |
| 8327 | 15,000.00 | 2/12/87 | 2/17/87 |
| 8328 | 15,000.00 | 2/12/87 | 2/17/87 |
| 8325 | 17,372.65 | 2/17/87 | 2/18/87 |
| | | 3/2/87 | 3/4/87 |

$58,116.65

There were no holidays or weekends between January 20 and January 23, or March 2 and March 4, 1987. February 14 through 16 was a three-day holiday.

The Bank closes its doors to the public at 3:00 p.m. Checks received after 3 p.m. are deemed to be received the following bank-

ing day. Each of the checks was stamped insufficient funds as of the date of delivery.

According to the Clearing House, participating banks such as the Bank pick up their demand items between 12:30 and 2:30 daily. No evidence was offered by the Bank that on the dates in question it failed to follow this practice. In the event of a dishonor, the participating banks fill out a Transmittal Letter, returning the dishon-·ored checks to the New York Clearing House on a form approved by the Clearing House containing a line which states:

> Delivered to the New York Clearing House
> 4:00 p.m. (Delivery Date)
> For Presentment to the Federal Reserve Bank of New York.

This form is to be filled with the date of transmittal of the dishonor and is stamped when received by the Clearing House.

According to the officers of the Bank, it is the Bank's practice to fill out the Transmittal Letter with the date of the receipt of the check by the Bank, and the printed time states the time the demand items were received. There is no evidence of any contemporary Bank record of the date and time the demand items were received.

Check No. 8311 was delivered and dishonored as indicated above. Checks Nos. 8327 and 8328 were submitted to the Bank on February 12, the Bank filled out the Transmittal Letter with the date February 12 and dated the Transmittal Letter February 13. The Letter was delivered to the Clearing House on February 17. Check No. 8325 was delivered on February 17, dishonored on February 18, resubmitted on March 2, and dishonored on March 4. The Transmittal Letter was dated March 3, filled out with the March 2 date and delivered March 4.

*Conclusions*

*Propriety of Summary Judgment*

The standard incantation with respect to the grant of summary judgment is applicable here. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted when no material issue of fact exists. In making this determination, all inferences and ambiguities must be resolved in favor of the party opposing the grant of summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985).

However, what is unique about these motions is that there is no dispute on the accuracy of the facts found above, but rather a profound difference as to the ultimate fact, the time of delivery of the checks to the Bank, which must be deduced from the circumstantial evidence, there being no direct evidence on the subject.

Neither the Bank nor Third Century has suggested that there is further relevant evidence to be adduced, nor have either suggested the desirability of a trial to resolve the issue presented. Under these particular circumstances, summary judgment is appropriate.

*The Required Date For Dishonor*

In relevant part, § 4–302 of the Uniform Commercial Code ("UCC") provides that a payor bank "is accountable for the amount of (a) a demand item ... whether properly payable or not if the bank ... does not pay or return the item or send notice of dishonor until after its midnight deadline." UCC § 4–302 (1977). The midnight deadline "with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item...." UCC § 4–104(1)(h). Thus, the UCC mandates that a payor bank must return a check or give notice of dishonor before its midnight deadline, that is, midnight of the banking day following the day the bank received the check. If, for any reason, the bank fails to make this firm deadline, the bank is liable for the face amount of the check. *See, e.g., Met Frozen Food v. National Bank of No. Am.*, 393 N.Y.S.2d 643, 647, 89 Misc.2d 1033 (Sup.Co. 1977). The UCC holds the bank strictly liable.

It is equally true that the UCC defines "banking day" as "that part of any day on which a bank is open to the public for carrying on substantially all of its banking functions." UCC § 4–104(1)(c). "For the purpose of allowing time to process items, prove balances and make necessary entries on its books to determine its position for the day, a bank may fix an afternoon hour

of 2 P.M. or later as a cut-off hour for handling of money and items and the making of entries on its books." UCC § 4–107(1). The Bank has established 3 p.m. as its cut-off hour. "Any item ... received on any day after a cut-off hour so fixed *or* after the close of the banking day may be treated as being received at the opening of the next banking day." UCC § 4–107(2) (emphasis added). "Item," which is defined as "any instrument for payment of money" in UCC § 4–104(1)(g), includes the checks in question here.

There is authority that if the checks at issue were received after closing hours and thus deemed received on the next banking day, namely, February 12 and March 3, then the dishonor dates of February 17 and March 4 would be timely. UCC § 4–104(1)(c) & (h); UCC § 4–107; *Pracht v. Oklahoma State Bank*, 592 P.2d 976 (Okla.Sup.Ct., 1979); *Cargill, Inc. v. Bunker Hill Elevator Co., Inc.*, 505 N.E.2d 75 (Ind.App. 4 Dist.1987); *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Devon Bank*, 654 F.Supp. 506 (N.D.Ill.1987).

The resolution of the motions thus turns on the burden of proof and the evidence with respect to the time of day the checks were received, before or after 3:00 P.M., the time when the Bank was closed to the public.

*The Checks Were Not Timely Dishonored*

The untimeliness of the dishonor of Check No. 8311 is conceded. Under any theory the check was dishonored either one or two days late.

As to the remaining checks, the first consideration in weighing the evidence is to allocate the burden of proof. The evidence is undisputed that the checks were delivered on February 12 and March 2 and that their pickup was under the control of the Bank. The dishonor on February 17 and March 4 is *prima facie* untimely, and the burden of proof shifts to the Bank, for:

[a]lthough a plaintiff generally carries the burden of persuasion on each element of his cause of action, special circumstances may lead a court to shift the burden of persuasion to the defendant on some part of the claim. One special circumstance commonly accepted is that the

burden will be shifted where the material necessary to prove or disprove an element "lies particularly within the knowledge" of the defendant.

*Nader v. Allegheny Airlines, Inc.*, 512 F.2d 527, 538 (D.C.Cir.1975), *rev'd on other grounds*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976) (citations omitted). The considerations of the Court in the *Nader* case, which shifts the burden to a defendant airline, are applicable to the instant case to shift the burden to the Bank. As the *Nader* Court states:

[s]everal considerations compel this result. The responsibility for promulgating and adhering to priority rules is delegated to the carriers by the Board, and the decision concerning which passengers will be denied boarding is solely within the carrier's control. Generally, any documents relating to the incident itself, its causes, and its resolution will be in the carrier's possession and the carrier will be in a better position to develop any needed documentation. Moreover, if the documents are difficult to discover, or if the carrier has not made and kept records, a plaintiff with a meritorious case would be unable to prosecute his action through no fault of his own. Thus, it makes sense from every perspective to place the burden on the carrier of showing how the priority rules legitimized its action.

*Nader*, 512 F.2d at 538.

Finally, if the Bank did not keep or make the needed documentation, Third Century should not be precluded from a meritorious claim. Thus, the burden of persuasion should fall on the Bank. *See also In Matter of J.R.*, 386 N.Y.S.2d 774, 779, 87 Misc. 2d 900 (Fam.Ct. Bronx Co.1976) ("[i]t has long been settled in New York as a general rule of evidence that where a defendant 'has knowledge of a fact but slight evidence is requisite to shift on him the burden of explanation.'") (citation omitted).

■ The Bank has failed to demonstrate by a preponderance of the evidence that the checks were delivered after 3 P.M. The facts which compel this conclusion are:

1. The checks were under the control of the Bank. No contemporaneous entry

was made, and no testimony based on personal knowledge of the time of receipt was offered.

2. The principal documents on which the Bank relies are the Transmittal Letters, filled out improperly, dated the next day. Most significantly, the 4 P.M. time on which the Bank relies is part of the printed form provided by the Clearing House.

3. The Bank stamped the checks as "insufficient funds" after it was determined that the day-end balance prepared for Sordelli had insufficient funds.

4. The Bank had failed to make a timely dishonor with respect to check No. 8311.

5. The Bank offered no business purpose for its claimed use of the Transmittal Letters which deviated from the instructions of the Clearing House.

6. The Transmittal Letters were dated February 13 and March 3, the days on which dishonor would have been timely.

The Bank has failed to establish that the checks were received after 3 P.M. Indeed, the direct and inescapable conclusion from the undisputed facts is that the defense of the late receipt is a post event construction, understandable in view of the Sordelli bankruptcy.

*The Bank Has Failed to Establish Estoppel*

 The Bank has urged that Third Century should be estopped from recovering on the checks since Third Century knew payment by the Bank would only have been made by mistake. UCC § 1–103 provides that:

> Unless displaced by the particular provisions of the Act, [i.e., the UCC] the principles of law and equity ... shall supplement its provisions.

However, as stated by one court in a similar case, "[t]he simple answer to this argument is that [UCC] 4–302 is a particular provision of the UCC that displaces [defendant's] equitable argument." *Bank Leumi Trust Co. v. Bank of Mid-Jersey*, 499 F.Supp. 1022, 1027 (D.N.J.1980), *aff'd*, 659 F.2d 1065 (3d Cir.1981).

Further, the Treasurer of Third Century has directly denied knowledge that the checks of Sordelli would be dishonored. The payor bank has been relieved of liability for missing its midnight deadline only where "the payee was *already aware* when presenting the check that it would not be accepted or paid except by mistake." *United States Fidelity and Guaranty Co. v. Federal Reserve Bank of New York*, 620 F.Supp. 361, 373 (S.D.N.Y.1985), *aff'd*, 786 F.2d 77 (2d Cir.1986) (emphasis added).

In the case relied upon by the Bank, the payee knew that the payor had died many months prior to the presentation of the check, that his estate was insolvent, and that his account had already been closed. *Bank Leumi Trust Co. v. Bally's Park Place, Inc.*, 528 F.Supp. 349 (S.D.N.Y.1981). Similarly, in the *U.S. Fidelity* case, the bank presenting the check knew that there was "no account from which to pay the check." *U.S. Fidelity*, 620 F.Supp. at 373.

In *Bally's Park Place*, the Court was concerned about imposing liability upon a payor bank guilty of computer induced negligence where the payee knew at the time it deposited the check for collection that the check was bad. 528 F.Supp. 349. The Court looked at the equities and determined that it would be unjust to hold a payor bank liable where the payee knew that payor's account was closed and where the form of the check was not computer readable. The Court was concerned that a payee could thus "set a trap for an unwary bank." *Id.* at 354. Here, Sordelli, the payor on the checks, was still in business, had not filed for bankruptcy and had an open and active bank account with the Bank of Baroda. Despite prior dishonors and the knowledge of an indebtedness of over $250,000, there is no evidence that Third Century knew that Sordelli would not cover the checks in issue.

*Conclusion*

Third Century is entitled to Summary judgment. Settle order on notice.

IT IS SO ORDERED.