**In re Harlan TENPENNY, Janie Tenpenny, Debtors.**

**Bankruptcy No. 1-85-00874.**

United States Bankruptcy Court, E.D. Tennessee.

Aug. 1, 1986.

Kyle R. Weems, Weill & Weems, Chattanooga, Tenn., and B. Timothy Pirtle, McMinnville, Tenn., for City Bank & Trust.

William R. Sonnenburg, Asst. U.S. Atty., Chattanooga, Tenn., for Farmers Home Admin.

Steven L. Lefkovitz, Rothschild & Lefkovitz, Nashville, Tenn., for debtors.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

This cause came on for hearing on the motions of City Bank and Trust to classify its claim and objecting to the claim of Farmers Home Administration. The hearing was begun on January 13, 1986, and continued on February 14, 1986.

The main issue raised by City Bank and Trust is one of priority between its security interest and the security interest of FmHA in the debtors' farm equipment. City Bank argues that its security agreement and financing statement, dated September 17, 1983, which covers "all equipment whether now owned or hereafter acquired," was intended by the debtors and the creditor to cover all such equipment, while the security agreements executed between the debtors and FmHA, which contain similar language, were not intended by the parties to cover the equipment.

The debtors executed four security agreements with FmHA in 1975, 1978, 1979, and 1981. Each contained the same language with regard to farm equipment:

*Item 2* All farm and other equipment (except small tools and small equipment unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following: ....

The debtors signed, and FmHA filed financing statements in 1975 and 1979. Continuation statements were filed in 1981 and 1984. The 1975 and 1979 financing statements read in relevant part as follows:

This Financing Statement covers the following types or items of collateral, including proceeds and products thereof; (a) Crops, livestock, other farm products, *farm and other equipment,* supplies and inventory. (Emphasis added)

The court heard the testimony of one of the debtors, Harlan Tenpenny and of two employees of FmHA, Mike Elam and William Haston.

Mr. Elam stated he was Assistant County Supervisor for Warren County in 1975 and that he was personally involved in the administrative procedures leading to processing of the Tenpenny application and grant of a loan from FmHA to Harlan Tenpenny. He further testified that, in preparation for this loan, he prepared a Farm Plan dated March 5, 1975. The Farm Plan required that FmHA take a security interest in Mr. Tenpenny's 800–gallon bulk milk tank, his cattle and in his 1975 crop. The Farm Plan contained no reference to a security interest on behalf of FmHA in all farm equipment held by debtor. Mr. Elam testified as follows:

I think that, upon reviewing the documents that we, in fact, had a lien on all machinery and livestock listed. I don't think it was my intention to take that lien.

Mr. Tenpenny stated that he signed the documents and that he gave a blanket security interest in all his equipment. However, counsel for City Bank and Trust Company then impeached the credibility of Mr. Tenpenny by introducing the following testimony from his deposition:

Mr. Weems: Now, Mr Tenpenny, there are different questions I need to ask you about individual claims for different parties and I would like to first ask you just very briefly about the claim of the government. Tell us about the Farmers Home Administration. Did you have an agreement then that you gave them just blanket everything?

Answer: No.

Upon further examination by the court, Mr. Tenpenny stated he did not enter into an agreement with FmHA in which he granted FmHA a blanket security interest in all farming equipment:

The Court: Did you knowingly give your equipment as security for the loan when you signed the document? That is the heart of the controversy when you were dealing with FmHA in giving the security. The document speaks for itself. He is not asking you to contradict the document. The question is did you knowingly give your equipment to secure the loan? It is a simple question.

Answer: To FmHA?

The Court: Yes.

Answer: At that time, no.

Mr. Elam testified that he processed the loan application and prepared approval forms for a loan made in 1979 by FmHA to Harlan and Janie Tenpenny. He testified that part of the loan application procedure for the 1979 loan was submission of a Request for Obligation of Funds form to FmHA approving officials. The Request for Obligation of Funds, executed between Michael R. Elam for FmHA and Harlan Tenpenny on September 9, 1979, contains the following requirements for security:

1. Second mortgage on 248.3 acres of real estate subject to first by FmHA.

2. First mortgage on all growing crops.

Mr. Elam further testified that it was the intention of FmHA to secure the 1979 loan only by a second mortgage on 248.3 acres of real estate subject to FmHA's first mortgage and a first lien on all growing crops.

Mr. William Haston stated that his position with FmHA in 1981 was Emergency Loan Supervisor but the FmHA official who was primarily responsible for processing the 1981 loan to Harlan Tenpenny was Billy Easterly. However, both Mr. Haston

and Mr. Easterly had authority to process the application.

Mr. Haston testified that,

The loans had to be secured (sic) which consists of what we call basic security or hard security that we knew that we should have equity in to cover the loan. Then the emergency loan regulations also required that we take a mortgage or a lien on everything else that any borrower had, real estate, chattels, the works, everything. Whether there was any equity in it or not, we were to take a mortgage on it.

Mr. Haston further testified as follows:

Question: Did you at any time tell anyone that Farmers Home was not taking a security interest in equipment?

Answer: No sir.

The Court: Conversely, did you tell them that they were?

Answer: If anyone had asked, I'm sure I would've given them the stock answer which was if we make an emergency loan, we're going to have a security interest in everything the man's got.

The Court: Do you have any present recollection of having discussed that with Mr. Tenpenny? Do you personally recall discussing that with him?

Answer: No, sir, I can't say whether it was discussed or not. It was understood with those loans that you had to put up everything he had as security.

(Tr. 94)

Mr. Haston admitted that FmHA regulations codified at 7 C.F.R. § 1941.60 controlled the requirements for collateral for the 1981 loan and that these regulations specifically required FmHA to list all equipment in which it was taking a security interest and include a serial or other identification number for each item. Mr. Haston admitted that the security agreement executed between FmHA and the debtors on June 3, 1981, contained no list of items of farm equipment and no identification numbers for items of equipment:

The Court: Well, what were you supposed to. do regarding obtaining the se-

curity interests on this occasion, put it in your own words?

Answer: Alright, sir. We should have according to our instructions listed everything we were going to take on the security agreement and also exclude any thing we were not going to take. We failed to do so on this particular security agreement we [sic] not include or exclude.

Mr. Pirtle: And you have acknowledged the fact that the regulations specifically provide that the serial or other identification number of major items of equipment should be listed in the security agreement?

Answer: According to our instructions.

Mr. Pirtle: You would acknowledge that this is correct, that the regulations so provide?

Answer: Yes, sir.

At the next hearing on February 14, 1986, Mr. Lefkovitz, representing the debtors, suggested that City Bank could not improve its position against FmHA by simply knocking out the security interests in equipment that were included in the pre-1981 FmHA documents. The court asked:

Is the June 1981 security agreement the one that I think of as the emergency loan wherein testimony was they really intended and it was their instructions to get equipment?

Mr. Lefkovitz: Yes, sir, that's the one.

The Court: So, why wouldn't the June of '81 be the key date.

Mr. Lefkovitz: I think it is the key date.

The court also asked:

All right. Let's find out if the gentlemen representing the bank if they would say that they have a perfected security interest in all farm equipment from June 3, '81.

What do you have that predates that or if you have a post-dated purchase money that's perfected?

Mr. Weems: Thank you, your Honor, Mr. Pirtle would like to present further proof on this issue of the June 1981 transaction insofar as showing the government and what the government obtained—the

Farmers Home Administration obtained on that day. I am just going to speak briefly as to the legal consequences, but he would like to present some further proof.

The Court: Would you address yourself as to whether or not you claim to have a prior perfection security interest in anything that predates June 3, 1981?

Mr. Weems: Except for purchase money to International Harvester, your Honor, because ours have expired.

The Court: All right.

Mr. Weems: We had one in 1983.

Thus, City Bank and Trust admitted that the 1981 security agreement of FmHA with regard to farm equipment was prior in time to any of the numerous documents submitted in the City Bank and Trust proof of claim.

■ There is disagreement among the courts on the question of whether the parties' intent not to include certain property as collateral can overcome a provision in a form security agreement that grants a security interest in the property. In this case, the court concludes that the parties intended the 1981 security agreement to give FmHA a security interest in all the debtors' farm equipment.

City Bank argues that FmHA did not acquire a security interest in the debtors' equipment, despite the parties' intent, because it failed to follow its regulations requiring a list of each item of equipment with the serial number. A description of the collateral in the security agreement is required not only for the protection of the debtor and creditor but also for the purpose of distinguishing the collateral from the collateral claimed by other secured creditors. J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code 903–904 (2d ed. 1980). The general description in FmHA's 1981 security agreement was sufficient for this purpose under Tennessee law. Tenn.Code Ann. § 47–9–110 & –9–203; *Cookeville PCA v. Frazier*, 16 B.R. 674 (Bankr.M.D. Tenn.1981); *Dyersburg PCA v. Kile*, 42 U.C.C.Rep. 1842 (Tenn.App.1986). The

question is whether failure to follow the federal regulations nevertheless defeats FmHA's attempt to acquire a security interest in the equipment.

The regulations appear to be for the guidance of FmHA's employees who make or guarantee loans. The regulations are not like statutes that make a contract void or illegal because of failure to comply. Surely, the regulations were not intended to deprive FmHA of priority against a security interest over which it would have priority under state law. Furthermore, the regulation does not say that all items of equipment must be listed. It says only that the "serial or other identification numbers of *major items* of equipment *should* be listed in the security agreement." 7 C.F.R. § 1941.57(e)(2) (emphasis added). (City Bank inadvertently cited 7 C.F.R. § 1941.60, which appears on the same page as this regulation). The court concludes that FmHA's failure to itemize the equipment in the 1981 security agreement did not prevent it from acquiring a security interest in all the debtors' farm equipment.

The remaining question is when or whether FmHA perfected the security interest in equipment that was created by the 1981 security agreement. FmHA did not file a new financing statement in conjunction with the agreement. It filed a continuation statement. There was also on record the 1979 financing statement which covered the debtors' equipment.

■ Section 9–402 of the Uniform Commercial Code specifically allows for the filing of a stand-by financing statement. Subsection (1) states: "A financing statement may be filed before a security agreement is made or a security interest otherwise attaches." Tenn.Code Ann. § 47–9–402(1). FmHA argues that the 1979 security agreement was valid as to equipment, but the court need not decide. The October 22, 1979, financing statement remained of record, and served to perfect the security interest in equipment that was created by the 1981 security agreement. *United States v. Gleaners & Farmers Co-op*, 481

F.2d 104 (7th Cir.1973); *In re Gilchrist Co.,* 403 F.Supp. 197 (E.D.Pa.1985), *aff'd* 553 F.2d 1246 (3rd Cir.1975).

Thus, the court concludes that FmHA had a perfected security interest in 1981 in all the debtors' equipment. Since City Bank apparently did not perfect a security interest in equipment until 1983, FmHA's security interest is ahead of City Bank's security interest in equipment, except for items in which City Bank has a purchase money security interest with priority and some motor vehicles for which City Bank may have title certificates with its liens noted ahead of FmHA. Tenn.Code Ann. §§ 47–9–312 & –9–302.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.