595 So.2d 1185 (1992)
SCHWEGMANN BANK AND TRUST COMPANY
v.
BANK OF LOUISIANA.
No. 91-CA-779.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 1992.
Writ Denied May 8, 1992.
*1186 John F. Whitney, Claude F. Reynaud, Jr., New Orleans, for plaintiff-appellee.
Henry L. Klein, New Orleans, for defendant-appellant.
Before KLIEBERT, DUFRESNE and GOTHARD, JJ.
DUFRESNE, Judge.
This is an appeal by Bank of Louisiana (BOL), defendant-appellant, from a summary judgment in the amount of $110,090.14, plus interest and attorney fees, in favor of Schwegmann Bank and Trust Company (Schwegmann), plaintiff-appellee and cross-appellant. For the following reasons, we affirm the judgment of the trial court as to all issues on appeal and cross-appeal, except as to pre-judgment interest. We also decline to award damages to Schwegmann for frivolous appeal of this matter by BOL.
The general background of this case is that a customer with several business accounts at both banks allegedly began a check-kiting scheme whereby he was able to increase his available funds at both institutions by making cross-deposits of checks drawn on his various accounts at each bank. The specifics of this alleged scheme as shown by the evidence of record, and particularly the deposition of Clarence Machado, a vice president at BOL, are as follows. In mid-July of 1990, it came to Machado's attention that there were possible irregularities in the various transactions being made by the customer. Upon investigation he discovered that the customer had been making large daily morning deposits at Schwegmann which included checks drawn on his BOL accounts in amounts often exceeding $100,000.00. Other *1187 evidence shows that the customer would then come to BOL later in the day and make deposits which similarly included large checks drawn on his Schwegmann's accounts. It was also shown that Schwegmann would routinely contact BOL around mid-day or early afternoon for information on the status of the BOL accounts, and BOL would typically give the balances, including the uncollected items drawn on the Schwegmann accounts which had been deposited earlier in the day.
It was further shown that the BOL employee who handled the customer's accounts knew that he also had a number of certificates of deposit with the bank. She therefore assumed that those C.D.s protected it from any potential loss in the event of problems with the as yet uncollected funds shown in the balances being given to Schwegmann. What this employee did not know, however, is that those C.D.s were pledged to secure other obligations.
When Machado analyzed the mid-July transactions, it became immediately apparent to him that a kiting scheme was probably in operation. He also discovered, however, that BOL was then in a negative position on the various accounts, and that the C.D.s were pledged for other obligations and thus not available to cover this short fall. He therefore decided to monitor the accounts on a daily basis, in the hope that the bank would get into a positive position, at which point he intended to dishonor further checks on the accounts and thus stop the kite without loss to his bank. He did not inform Schwegmann of his discoveries or conclusions as to the scheme. While he was originally uncertain about whether Schwegmann was aware of this problem, when he learned on August 6, of the almost daily calls from that bank as to the accounts, he concluded that it must also have known of the problem. He still did not contact Schwegmann to discuss the matter.
On August 7, Machado's assessment of the situation was that BOL was now in a positive position, and he therefore decided to dishonor all checks drawn on the accounts beginning the next day. However, at 4:55 P.M. on August 7, BOL was notified by Schwegmann that it was dishonoring some 1.3 million dollars worth of checks drawn on its accounts. BOL's response was to immediately dishonor all checks drawn on its accounts as of that same day.
Subsequent negotiations between the banks led to resolution of all claims between them, except for two checks, the cumulative effect of which left Schwegmann in a negative position of some $110,000.00. The first was Check No. 1483, drawn on the customer's BOL account in the amount of $185,000.00; the second was Check No. 183, drawn on the customer's Schwegmann account in the amount of $150,000.00. Both instruments were dated August 2, 1990, and each had been cross-deposited on that same date.
The present dispute resulted from a divergence of the time of presentment of the two instruments at the respective payor banks. BOL received Check No. 1483 on Friday, August 3, while Schwegmann did not receive Check No. 183 until Monday, August 6. Both checks were dishonored on August 7 by the respective banks. BOL admitted that Schwegmann's refusal to pay its check was timely, coming as it did before midnight on August 7. Schwegmann's position, on the other hand, was that BOL's dishonor of their check was untimely because coming after its applicable midnight deadline of August 6, and therefore that it was strictly liable for that portion of the face value of the check which would make Schwegmann whole, i.e. some $110,000.00. Schwegmann further contended that it was entitled to interest and attorney fees for BOL's groundless refusal to honor the check. BOL responded that Schwegmann was in bad faith in the entire matter and should therefore be precluded from asserting this claim.
Schwegmann brought suit against BOL, and on the above facts, the district court granted summary judgment in its favor. That court also dismissed BOL's reconventional demand which asserted that Schwegmann should be estopped from pursuing its claim on the grounds of bad faith in 1) not informing BOL of its apparent awareness *1188 of the kite and 2) in failing to notify BOL of its intent to dishonor checks prior to noon on August 7, as required by local banking customs.
This appeal followed. BOL alleges here that summary judgment was inappropriate because there are factual issues material to the cause which are in dispute, particularly Schwegmann's bad faith dealings and its violation of local custom as to pre-noon notice of dishonor. Schwegmann, for its part, asks that we reverse the district judge's post-judgment denial of sanctions under La.Code Civ.Pro., art. 863, and further seeks damages in this court for frivolous appeal as per La.Code Civ.Pro., art. 2164. It finally asks for additional interest on the judgment.
Under applicable banking laws, it is clear that Schwegmann's dishonor of Check No. 183 was timely (which BOL admits) and that BOL's dishonor of Check No. 1483 was not. This latter instrument was received by BOL on Friday, August 3, and under La. R.S. 10:4-104(1)(h) and 4-301(1)(a), it had until midnight of its next banking day, Monday, August 6, to dishonor the check. Its failure to do so renders it strictly liable for the value of the instrument, as per La. R.S. 10:4-213(1)(d) and 4-302, see Third Century Recycling, Inc. v. Bank of Baroda, 704 F.Supp. 417 (S.D.N.Y.1989).
The court is aware of Mr. Machado's affidavit wherein he asserts a local custom of pre-noon notification of an intent to dishonor checks over $3,500. However, as Schwegmann notes, had its notice of dishonor been given at 11:55 A.M., instead of 4:55 P.M., on August 7, that would not have put BOL in any more favorable legal position because its deadline for dishonor had expired as of midnight on August 6. This assertion as to the existence of such a local custom, whether true or not, is thus irrelevant on the facts of this case, and does not present a material issue in dispute.
The more difficult question here, however, is whether the alleged knowledge of the asserted kite on the part of Schwegmann raises an issue in dispute which would preclude summary judgment. It is correctly urged by BOL that the court should resolve all reasonable questions as to alleged facts of record in the non-moving party's favor, and deny summary judgment when any such questions go to a material issue in the case.
In the present matter, the facts asserted by BOL are that Schwegmann was aware of the alleged kiting scheme and did not come forward with this information prior to dishonoring the customer's checks on August 7. On the record before us, we agree that there is sufficient evidence to raise a factual question as to whether Schwegmann was aware of the alleged kite. However, that resolves only the first part of the inquiry. The second part is whether the answer to the disputed factual question in favor of the nonmoving party, i.e. that Schwegmann knew of the kite, would be material to resolution of the dispute. Here, we determine that it would not.
We so conclude because BOL, by admission of its own vice-president, had decided some three weeks prior to the events giving rise to this litigation, that a kite was probably in progress. This same officer further candidly admitted that he carefully monitored the accounts daily to ascertain when his bank might be in a positive position, at which time he intended to dishonor checks and stop the kite. He further admitted that he did not inform Schwegmann of the situation.
Nonetheless, BOL now asserts that Schwegmann was somehow guilty of bad faith in not informing it of what it already knew. And not only did BOL have this knowledge, but it had every intention of using that knowledge to make itself whole, if need be at the expense of all other parties, including Schwegmann. Finally, it is evident that BOL did not contact Schwegmann in mid-July when the kite became evident because it was then in a negative position. It simply did not want to take the risk that Schwegmann might terminate the kite immediately if it were informed of the problem, thus leaving BOL with a net loss.
*1189 In these circumstances, we do not find the issue of Schwegmann's knowledge of the kite material to resolution of the case. As shown above, banking laws render a payor bank strictly liable for instruments which it fails to dishonor timely, except in certain limited circumstances, none of which exist in this case. We therefore hold that summary judgment was proper.
For its part, Schwegmann urges that the judgment should be increased by $2,406.92, representing conventional interest of $31.67 per day for the 76 days between submission of the matter on April 4 and signing of the judgment on June 19, 1991. We agree. There is no dispute that the daily interest was $31.67, and that is the figure used by the trial judge in calculating interest through April 4. However, as the judgment was not signed until June 19, Schwegmann is entitled to judgment for this additional conventional interest amount, with judicial interest on the total award from June 19, 1991.
The final issues concern sanctions and damages for frivolous appeal sought by Schwegmann. After rendition of judgment, Schwegmann pursued a previously filed motion for sanctions in the district court under La.Code Civ.Pro., art. 863. After a hearing, such relief was denied. It urges here that that decision should be reversed. We disagree.
The imposition of sanctions is a matter within the sound discretion of the trial judge, and such rulings will not be disturbed on appeal absent an abuse of that discretion, Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d 898 (La.App. 2nd Cir. 1990). In the present matter, we find no such abuse.
Similarly, we do not find the present appeal to be frivolous. Although Schwegmann's position under the banking laws has been vindicated here, it is our opinion that the defense of bad faith asserted by BOL is not one so devoid of any reasonable factual or legal basis as to constitute an abuse of the appellate process. This is especially so considering that this matter was resolved by way of summary judgment in the district court. Indeed, the only relief that BOL seeks here is to have the matter remanded for a full trial on the merits. Although we have concluded that there are no material issues of fact in dispute, BOL's assertion here to the contrary is clearly not frivolous, and we so rule.
For these reasons, the judgment of the district court is amended to provide additional conventional interest on the judgment of $2,406.92. In all other respects that judgment is affirmed, and BOL is cast for all costs of this appeal.
AMENDED, AND AS AMENDED, AFFIRMED.